IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEITH PAYNE,<br><br>    Plaintiff,<br><br>v.<br><br>BEEF PRODUCTS, INC.; MID-TEC, INC.; and ZACHRY ENGINEERING CORPORATION f/k/a UTILITY ENGINEERING CORPORATION,<br><br>    Defendants. | Case No. 8:10CV0033<br><br>**COMPLAINT**<br><br>**(JURY DEMAND)** |

COMES NOW Plaintiff, Keith Payne (hereinafter, "Mr. Payne"), by and through his attorneys, Kutak Rock LLP and Thompson, Phipps and Thompson, who hereby states and alleges as follows for his Complaint against Beef Products, Inc. (hereinafter, "BPI"), Mid-Tec, Inc. (hereinafter, "Mid-Tec") and Zachry Engineering Corporation f/k/a Utility Engineering Corporation (hereinafter, "Utility Engineering") (collectively, "Defendants").

## I.   PARTIES, JURISDICTION, AND VENUE

1.   Mr. Payne is a resident of the State of Iowa.

2.   Upon information and belief, BPI is a Nebraska corporation with its principal place of business in Dakota Dunes, South Dakota.

3.   Upon information and belief, Mid-Tec is a Missouri corporation with its principal place of business in Anderson, Missouri.

4.   Upon information and belief, Utility Engineering is a Delaware corporation with its principal place of business in Denver, Colorado.

4837-5041-5620.4

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Mr. Payne and the Defendants and the amount in controversy exceeds $75,000.

6. Venue is proper in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1391 because the accident giving rise to the claims for relief asserted herein occurred in the State of Nebraska.

## II.    GENERAL ALLEGATIONS

### A.    Background

7. During the summer of 2007, BPI was engaged in an expansion project of its facility near South Sioux City, Nebraska (hereinafter, the "Expansion Project").

8. Utility Engineering was the construction manager for the Expansion Project.

9. Mid-Tec was a general contractor on the Expansion Project.

10. At all times relevant, Lieber Construction was assisting BPI, Utility Engineering and Mid-Tec with excavation for the Expansion Project.

11. At all times relevant, Mr. Payne was employed by Lieber Construction as a laborer.

12. On or about July 11, 2007, BPI, Utility Engineering and Mid-Tec allowed the excavation crew to operate a long-backhoe while a large number of workers worked within the close confines of the partially excavated pit.

13. With the knowledge of BPI, Utility Engineering and Mid-Tec, Mr. Payne was one of these workers in the dangerous, partially excavated pit.

### B.     The Accident

14.    On or about July 11, 2007, Mr. Payne was cleaning off concrete piers in the partially excavated pit at the BPI facility.

15.    Without notice or alarm, the hoe bucket of the long-backhoe violently slammed against Mr. Payne's back, pushing him against the concrete wall.  As Mr. Payne struggled to breathe, he felt the steel claw of the long-backhoe opening on his back.

16.    As the claw opened, it grabbed hold of Mr. Payne's left leg and dragged him approximately 10 feet.

17.    In an attempt to free himself from the long-backhoe's grasp, Mr. Payne managed to wrench his right leg free.  At that exact moment, the long-backhoe completely severed Mr. Payne's left leg.

18.    At the time Mr. Payne's left leg was severed, none of his co-workers had witnessed the accident.  Mr. Payne tried to hop on his only remaining leg approximately 30 feet to safety and subsequently fell into a hole.

19.    Approximately five minutes later, a BPI employee appeared.  He said nothing to Mr. Payne.

20.    Three to four minutes thereafter, a BPI nurse came on the scene and attempted to take Mr. Payne's blood pressure and requested that he "breathe harder."  Mr. Payne followed the BPI nurse's instructions and an increased amount of blood began to pour from his leg.

21.    While waiting for emergency personnel to arrive, other construction workers on the scene began to look for Mr. Payne's severed leg, which was eventually found inside the long-backhoe's bucket.

22. Approximately 20 minutes after Mr. Payne's limb was violently torn from his body, emergency medical personnel arrived on the scene and took him to the hospital.

23. Despite the massive blood loss, Mr. Payne never lost consciousness and was suffering from an indescribable amount of pain.

24. Mr. Payne endured numerous surgeries and at least one skin graft following the accident. Medical personnel eventually had to cut an additional four inches off of Mr. Payne's leg.

### III. FIRST CLAIM FOR RELIEF
### (Negligence)

25. Mr. Payne incorporates and realleges paragraphs 1 through 24 as if fully set forth herein.

26. Upon information and belief, BPI was the owner of the facility under construction, Utility Engineering was the construction manager and Mid-Tec was the general contractor.

27. BPI, Utility Engineering and Mid-Tec had a duty to enact and follow policies, procedures, and industry safety standards for the safety and well-being of the workers at the construction site.

28. BPI, Utility Engineering and Mid-Tec were negligent in one or more of the following ways:

    a. Failing to properly supervise workers at the construction site;

    b. Failing to provide proper safety instruction on the construction site;

    c. Failing to follow safety protocol at the construction site;

    d. Allowing workers to work in the excavation pit while excavation was taking place;

   e. Failing to provide a spotter to alert of individuals in the pit during excavation;

   f. Failing to warn of the foreseeable dangers associated with excavating while individuals were within the excavation pit;

   g. Failing to warn of the foreseeable danger associated with excavating without the use of a spotter; or

   h. Otherwise violating applicable industry standards or state or federal common and statutory laws.

  29. BPI's, Utility Engineering's and Mid-Tec's above acts and omissions, independently or in combination with one another, are the direct and proximate cause of Mr. Payne's horrific injuries and damages as set forth herein.

### IV. DAMAGES

  30. Mr. Payne incorporated and realleges paragraphs 1 through 29 as if fully set forth herein.

  31. As a result of the actions individually, jointly and/or severally of each Defendant, or of persons or entities for whom Defendants are responsible, Mr. Payne has the legal right to recover at least the following injuries, general damages and special damages:

   a. The reasonable value of medical, hospital, nursing, therapy and similar care and supplies reasonably needed by and actually provided to Mr. Payne and reasonably certain to be needed and provided in the future;

   b. The wages, salary, profits, business and/or reasonable value of the working time Mr. Payne has lost because of his inability and/or diminished ability to work;

    c.    The reasonable value of the earning capacity, business or employment opportunities Mr. Payne is reasonably certain to lose in the future;

    d.    The reasonable value of Mr. Payne's loss of the use of his property;

    e.    The reasonable cost to modify property to allow handicap access;

    f.    The reasonable cost of prosthetic devices and other health aids;

    g.    The reasonable cost of obtaining substitute domestic services;

    h.    The reasonable monetary value of the physical pain and mental suffering and/or anxiety Mr. Payne has experienced and is reasonably certain to experience in the future;

    i.    The reasonable value of the emotional distress Mr. Payne has experienced and is reasonably certain to experience in the future;

    j.    The reasonable monetary value of any injury to Mr. Payne's reputation;

    k.    The reasonable monetary value of any humiliation Mr. Payne has experienced and is reasonably certain to experience in the future; and

    l.    All other damages recoverable in the normal course of the claim and causes of action asserted herein.

WHEREFORE, Mr. Payne demands judgment be entered in his favor and against all Defendants in an amount of just, reasonable and adequate compensation for the injuries and damages Mr. Payne has suffered and will suffer, together with interest, costs and attorneys' fees.

Mr. Payne requests a jury trial in Omaha, Nebraska.

KEITH PAYNE, Plaintiff


By: s/ Robert M. Slovek
    Robert M. Slovek #17798
    Matthew M. Enenbach #22891
    Kutak Rock LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, NE  68102-2186
    (402) 346-6000

    -and-

    Patrick J. Phipps
    *Pro Hac Vice forthcoming*
    Thompson, Phipps and Thompson
    P.O. Box 442
    Moville, IA 51039